Good morning. May it please the court. My name is Eitan Kassel-Janich, and I'm representing Birgit Putz in this appeal. In January 1996, at age 31, Putz began experiencing fatigue that was so severe that she had to quit a job that she loved. She's now 45, and she has not worked since February 1996. Putz's date last insured is December 31, 2001, so we must prove disability prior to that date for her to receive disability benefits. Could I ask just a question? Maybe there's an obvious answer, but I noticed that you wound up stipulating that the onset date was the beginning of that month, so it's just a one-month window. Is there a reason for that? Her prior attorney at her hearing did agree at the hearing to amend the onset date. I think what he had in mind was to make it simpler for the judge, because the earliest she can get benefits in this case is actually 12 months prior to the application date in 2003, so there's not a whole big difference in being found disabled as of December of 2001 versus February of 1996. The correct thing he should have done is stuck to the correct onset date, because the evidence in this case does show that she's been disabled since February 1996, and there's nothing administratively in the procedures of Social Security that would prevent her from reamending her date to the real date, which is February 1996, and the judge certainly could have ruled that way. Thank you. So Putz has been treated and examined by several different specialists. In a chronic fatigue case, chronic fatigue syndrome is a notoriously difficult impairment, both to establish a diagnosis and to establish limitations, and to treat. There's no known cure for it. Some people get better over extended time. Some people never get better. In this case, the diagnosis of chronic fatigue syndrome was established by two specialists, Dr. DiMaio, who's an infectious disease specialist. In June 1996, he diagnosed Ms. Putz with chronic fatigue syndrome, and several years later a rheumatologist also diagnosed her with chronic fatigue syndrome. Well, just to be clear, the ALJ accepted that she had chronic fatigue syndrome, and it seems to me what his decision went off on was there was no corroboration for the disabling effects, the severity, based on all of the medical history that he reviewed. So are we debating here whether there's no finding that she didn't have CFS, it was just whether it was disabling. You're exactly right. The issue in this case is what are the limitations arising from the chronic fatigue syndrome. Now, the important distinction you just drew is that an ALJ can look to objective findings, excuse me, the medical doctors, Dr. DiMaio and Dr. Hilson, look to objective evidence as well as clinical findings and came up with their conclusion that the diagnosis was established. But once the diagnosis is established by an acceptable medical source, such as those two physicians, after that the next step is for an ALJ to determine, well, what are the limitations that are caused by this. And at that point, an ALJ cannot point to a lack of objective medical findings to reject opinion evidence and to reject testimony and lay testimony because with chronic fatigue syndrome, there much of the time are not objective findings that will show the level of impairment. The only way to really determine it is by looking at what her treating physicians say, by looking at what she says in describing her problems and looking at the lay evidence where people describe their observations of her. So I think it was improper for the ALJ to reject Putz's testimony about her level of impairment based on a lack of objective evidence. That would have been a correct reason to find that there was no chronic fatigue syndrome. But once there's an established diagnosis, that's not a legitimate or convincing reason to reject any evidence. Now, one of the complications in this case is that Putz's primary medical care was provided by a naturopath, the well-named Katie Data. Dr. Data twice wrote opinion letters explaining how she believed that Putz was unable to do any type of work due to this pervasive fatigue that she'd experienced since late 1995, early 1996. One problem in the case is that in one of the most detailed statements that Dr. Data made, after she stated that it was a professional opinion that Putz had chronic fatigue syndrome, she wrote, and there is no plausible explanation for her symptoms. It was quite obvious from reading the entire paragraph that's in that what she meant was there was no other plausible explanation for her symptoms. I mean, she goes on in that paragraph to say she's been severely impaired by this fatigue since early 1996. She continues to do a complaint of and lists a number of the symptoms that are typical of chronic fatigue syndrome. And her final sentence, she is unable to work full or even part-time on a consistent basis. Now, both the ALJ and the commissioner in his brief have argued that, well, look, Dr. Data said that there's no plausible explanation for her symptoms. That's what she wrote. That's obviously not what she meant. What was the page in the ER you were? I'm citing to page 246 and 47. What's the date on that one? The date of it? Yeah. That's the one from September 2003. Okay, thank you. That's what I needed. All right. So under Social Security ruling 063P, the ALJ should have given Dr. Data's opinion the most weight. She's the person who knew the most about what was going on with Putz for all these years. Instead, he gave the opinion 08, and none of his reasons were legitimate. As I read the guidance about non-accepted medical people, which I guess is what a naturopath is, there should be given weight with regard to their perception of what the person can do and what their symptoms are, but not necessarily to a diagnosed, not to a diagnosed. Absolutely. She was not qualified to establish the diagnosis. So the fact that she said that this was due or wasn't due to chronic fatigue syndrome is sort of irrelevant. What's relevant is what she said, what she perceived about her symptoms. That's correct. She had reviewed the reports from the experts who had diagnosed her. No, her diagnosis doesn't mean anything, actually, in this case, under Social Security analysis. Another big problem in this case is the ALJ's rejection of Putz's testimony where he didn't even fully discuss it. In a chronic fatigue syndrome case, that's what you've got to look at. That's what's really important. That's the only way you can establish what your limitations are, and most of her testimony about her limitations are not even discussed by the ALJ. Significantly, she submitted a diary that showed day by day just how limited she was. The ALJ didn't even mention the diary. Another way that you establish the limitations in a chronic fatigue syndrome case is through lay testimony, and there are statements and testimony from two witnesses, Dreena Putz, who's her sister, and Luella Martin, who's a caregiver for her father. And the ALJ rejected all that, but none of his reasons are legitimate. Finally, the ALJ put all that together into a residual functional capacity assessment that has no relationship to how she actually functions, how she was described by Dr. Data, how she was described by the lay witnesses, and how she described herself. You may want to save a little bit of time. And I would like to reserve the balance of my time for rebuttal. Thank you. Thank you. Good morning. Good morning. May it please the Court, Jamala Edwards for the Commissioner. Welcome back. Thank you. Substantial evidence supports the ALJ's decision, and as we know, reasonable minds will differ about the evidence. We would argue when there's more than one rational interpretation, then the ALJ's interpretation is the one. I'm not sure the ALJ, though, quite grapples with the issue, as at least is framed by counsel's argument, which is that the ALJ accepted that she had chronic fatigue syndrome and then relies on absence of objective medical evidence to say, well, she can't possibly be as incapacitated as she and her lay witnesses attest to and that Dr. Data's letter attests to. So he hangs it all on absence of objective medical evidence, doesn't he? So what's your response to that if, in fact, it is true that it's the severity? He's not questioning. He's accepted that she has CFS. You're right. The ALJ found at step two that Ms. Putz had chronic fatigue syndrome as a severe impairment. While a finding at step two is a de minimis finding, it's just a screening tool kind of to get through the gate and say this is a meritorious claim. Sure, but then what is the objective medical evidence standard for CFS? Well, there's nothing to contradict the statements about her inability to do what she said she wants to do and her past history indicates she was capable of doing. There's no finding of malingering. He's simply saying, well, there's no objective medical evidence. And what is the objective medical evidence that would surface and support the severity to contradict what she claims are her limitations borne out by other people? Well, the Social Security Ruling 99-2P is our guidance on CFS, chronic fatigue syndrome. It clearly says there are not diagnostic criteria for CFS at this time, and as counsel has pointed out, there isn't a cure. However, there are objective markers and other diagnosis that are usually found when someone has CFS. So they say it's likely someone would have CFS if you see the Epstein-Barr titer in a certain range, if you have tinder points at a certain range, if you have these certain symptoms during a six-month period at a certain severity. She didn't demonstrate any of those. That doesn't make any sense because it's just, I mean, that emphasis doesn't make any sense in the context of this case, as Judge Fischer has said, because the ALJ accepted that she had this diagnosis. So now to say that she, the reason why she doesn't have, hasn't shown the requisite severities because she doesn't have the diagnosis is simply self-contradictory. Well, a finding at Step 2 got her through the gate. The ALJ really gave her the benefit. I understand that, but what does, but if he then contradicts himself. The ALJ gave her the benefit of the doubt. Okay. I mean, we have Dr. DeMaio's statement that, yes, she has the diagnosis of CFS, but we really don't have it anywhere else except from Dr. Data, who is a naturopath and other source. I thought she had it also from the rheumatologist and from others. There's a Dr. Plymate, but he gives an equivocal CFS versus. But isn't the premise of this case at this point that she does have this illness? Well, the ALJ accepted that. Okay, so it's accepted. So how come we now go on to the next stage and say, but she doesn't? But is every Step 2 impairment that a claimant has then thus disabling? No, but it is her impairment. So, therefore, to premise the non-disabling on the sense that she doesn't have the impairment, as opposed to the fact the impairment is not severe enough, is simply a self-contradictory statement. It's rather looking at the objective markers that are in 992P and saying, well, she does have this. She has shown some of these symptoms. I'm going to give her the benefit of the doubt, go past Step 2, do a full analysis of this case, and see how severe is her impairment, severe to the point of disabling. In fact, Dr. Data, besides her disability opinions, which is on an issue reserved to the commissioner, she has had normal objective findings in her treatment, contemporaneous, I might add, treatment examinations. Several years later, in 2003-2007, many years after the date last insured, she's giving a disability opinion. Well, meanwhile, during this period of time, Ms. Putz is only receiving treatment periodically from the NASPATH, is going one time here, one time here to different doctors, not setting up any regular care, has declined treatment at a CFS specialty clinic, is not taking prescription medication or following an exercise regime that we know of. Is there evidence in the record as to what prescription medicine might have been helpful? Yes. In fact, Dr. DiMaio specifically says, I find that she has a CFS and that she's not following a – that she would benefit from a change in her treatment plan, that she would benefit from taking an antidepressant medication. But she did try various times. She tried one. She tried Zoloft. Didn't work for her. She didn't try anything else. She's been told that Prozac and some other things would help her as well. A claimant is responsible for their own care. If she's declining the treatment options that are available to her, the ALJ can't find that she's disabled if she hasn't explored what is available to her medically. What does it mean when it says that she had elevated sedimentation rate and hyperthyroid? What is sedimentation rate? Elevated sedimentation rate, now I'm not a medical expert, but my understanding is that it indicates an infection. And I believe that she had a 55, which I think is in slightly above normal range. Would that be considered an objective medical indicator? Well, from what I read, it's not necessarily indicative of anything in particular, except for an infection. It's kind of a global testing hypothesis. Something's wrong. Let's do further testing and indicate. She did have an Epstein-Barr titer exam or testing, and that came back at the 1 colon 2. I'm not quite sure how to define that, but to actually be an objective finding for Epstein-Barr, it has to be 1 colon 5 or above. So she didn't meet that standard. Now, the ALJ did not only look at the objective evidence to reject Putz's credibility and her subjective allegations. He did look at the entire record. He looked at the entire record to determine severity, and he looked at these items that I mentioned, not taking the prescription medication, not having regular routine care, not going to a specialty clinic. He looked at these. He noted them in the decision. And as far as the no plausible explanation for symptoms means no other plausible explanation, well, we can't read into Dr. Data's opinion. And as I noted earlier, reasonable minds will differ. I want to come back to that sedimentation, because Dr. Hilson, in January of 1999, he's a rheumatologist. He's reciting her own statements about having had this viral-type illness, and he talks about her having been evaluated by Sunanda Oberoi, I guess that's another doctor, with elevated sedimentation rate, and that she feels washed out. And his assessment is elevated sedimentation rate and fatigue consistent with chronic fatigue syndrome. So here you have a doctor looking at objective markers and concluding that she has CFS a couple years before the date. So what's the relevance of that? Well, again, we don't dispute that she has been diagnosed with CFS, and the ALJ found at step two that she has CFS, a severe impairment. The ALJ just used what he had in the record to show that it wasn't as severe as disabling. And I would say Dr. Hilson was a one-time treatment. It doesn't appear that she ever went back to him, and he didn't articulate any functional limitations. Okay. Thank you. Okay. One of the things about looking at this so-called conflict in Dr. Data's opinion and that different minds can differ, I don't see how there's any differing minds can differ on that one. It's obvious if you look at her language, the entire paragraph, to say that that paragraph stands for the proposition that she has no plausible explanation as opposed to no other plausible explanation just doesn't make sense. And what about the absence of the commentary of DeMille saying she's not seeking alternative kinds of treatment to try to address these issues? Actually, I think her problem was she was seeking too many alternative kinds of treatments. Her primary doctor was a naturopath. That's who she went to. That's who she trusted. She actually, the record had her, and cited in my brief. The record shows she actually sought naturopathic care over the Internet from somebody on the other side of the country. She was desperate to try to find something, but antidepressant medications had not worked for her in the past, and she just, they disagreed with her. She took one Zoloft, or did she take more than one? That's what I was looking through my records trying to find. I thought she took another one, too. I thought she had taken another one as well earlier, but I didn't find the reference for you. But in any event, she just didn't feel confident in taking them. She was referred to a clinic by Dr. Dayton and didn't go. She was referred to a clinic and she didn't go because it was in Seattle, and she didn't think she could even handle the trip there. Nobody, but the ALJ didn't ask her about that, why you didn't go. You could have, and she would have told him. Okay, thank you very much. Thank you. Thank you, counsel, for the argument. Case is submitted.
judges: Tashima, Fisher, Berzon